UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　v.<br>JACK SEXTON and RONALD KETTELLS,<br>　　　　Defendants. | Case No.  CR11-383RSL<br><br>ORDER DENYING MOTIONS TO SUPPRESS EVIDENCE |

This matter comes before the Court on Defendant Ronald Kettells' "Motion for Franks Hearing" (Dkt. # 60), in which Defendant Jack Sexton joins (Dkt. # 63), and Sexton's "Motion to Suppress Evidence Due to Fourth Amendment Violations," (Dkt. # 62), in which Kettells joins (Dkt. # 67).  Defendants seek to suppress evidence obtained during two searches following their arrest because the search warrant applications lacked sufficient detail and omitted relevant facts, the searches exceeded the scope of the two warrants, and Defendants did not consent to the searches.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, and having considered the evidence presented during the Franks hearing, the Court finds as follows:

## I.  BACKGROUND FACTS

On October 25, 2011, after Defendants were arrested, Detective Cynthia Sampson of the King County Sheriff's Office ("KCSO") applied for a search warrant telephonically.  Dkt. # 62-6 at 1.  To support the warrant application, Detective Sampson

ORDER DENYING MOTIONS - 1

prepared and signed an affidavit describing the investigation of a series of bank robberies in the greater Seattle, Washington area. Dkt. # 62-5. Although Detective Sampson was involved in the investigation, she relied on information that KCSO Detective Christina Bartlett and Seattle Police Department ("SPD") Detective Len Carver, the co-leaders of the investigation, provided at the scene of the arrest. The affidavit describes five bank robberies, witnesses' descriptions of the suspects, and the eyewitness identification of the car used in the most recent robbery. Id. at 3-4. The affidavit also describes the detectives' interview of the car's registered owner, Terrance Stone, and his statements linking the Defendants to the car and the robberies. Id. at 4-5. Finally, the affidavit describes the police surveillance of the property in which Defendants were suspected to be staying as well as the subsequent arrest of the Defendants in the car that had been earlier identified just outside of the locked gate surrounding the property. Id. at 5.

King County Superior Court Judge Laura Gene Middaugh granted Detective Sampson's application and issued a search warrant authorizing the search of the property where Defendants were staying, including the trailers in which Defendants were living and other buildings on the property, and a 1991 Ford Tempo, the car Defendants were driving at the time of their arrest. Dkt. # 62-7 at 2-3. Although the detectives had previously obtained oral consent from Defendants and written consent from Sexton to conduct an unlimited search of the property, trailers, vehicles, and the Ford Tempo, the detectives elected to obtain a search warrant out of an abundance of caution.

Detectives executed the search on October 25, 2011 in the evening hours. During their search, the detectives seized a black baseball cap, a handgun box, a black messenger style bag, identification cards, a black wig, and gloves. See Dkt. # 62-3. Toward the end of the search, FBI Special Agent Carolyn Woodbury noticed a trail

ORDER DENYING MOTIONS - 2

leading to an abandoned Chevy Cheyenne truck on the far side of the lot.  During her search of the truck, she retrieved an Easton baseball bag containing a Hilary Clinton mask, an old man mask, a black rain coat with shotgun shells, an empty gun holster, two rifle magazines, two rifles, a pistol-grip shotgun, and a Hi-point pistol in a holster.  Id.

Two days later, Detective Sampson submitted a second warrant application based on her telephonic application and an addendum to her original affidavit to request authorization to search the same property in the daylight, a car recently driven by Sexton and three cell phones found in the Ford Tempo.  Dkt. # 62-5.  Judge Middaugh issued the second search warrant and detectives conducted the follow up search on October 27, 2011.  Id.

Defendants requested an evidentiary hearing under Franks v. Delaware, 438 U.S. 154 (1978), based on their contention that the warrant applications were defective because Detective Sampson's supporting affidavit lacked material information and had this material been included, the applications would have lacked probable cause.  Dkt. # 60 at 8-12.  The Court granted Defendants' request and held an evidentiary hearing on February 25-26, 2013.

## II.  ANALYSIS

### A.  Franks Hearing

"The threshold determination in a Franks hearing is whether erroneous statements or omissions in an affidavit supporting a search warrant were made knowingly and intentionally, or with reckless disregard for the truth."  United States v. Senchenko, 133 F.3d 1153, 1158 (9th Cir. 1998) (quotation marks omitted).  If such a finding is made, the court must determine whether the affidavit, once supplemented by the omissions, would provide a substantial basis for finding that probable cause existed.  Id.; United States v. Stanert, 762 F.2d 775, 782 (9th Cir. 1985) (applying Franks standard to omissions).

ORDER DENYING MOTIONS - 3

The Court finds that Detective Sampson did not knowingly and intentionally, or with reckless disregard for the truth, omit material information in her affidavit. During the Franks hearing, Detective Sampson testified credibly that she prepared the affidavit based on in part on her limited personal knowledge of the investigation. Detective Sampson was not aware of the details of the investigation, but she relied heavily on information from Detective Carver and Detective Bartlett, both of whom testified that they did not intentionally or recklessly omit any information when they helped Detective Carver complete the affidavit. Although the affidavit may have omitted important facts that should have been included, the Court is satisfied that the detectives did not try to mislead Judge Middaugh. Defendants have not presented any evidence to suggest otherwise. Thus, Defendants have failed to meet their burden under Franks.[1]

**B. Consent**

Even if the applications for the search warrants were defective, the evidence seized during the searches would be admissible because both Defendants consented to an unlimited search of the property. The testimony at the hearing established that after Defendants were arrested and read their Miranda rights, they discussed whether to consent to the search and agreed to allow the detectives to search the property. Furthermore, Defendant Sexton signed a consent form, acknowledging that he consented to an unlimited search of the property, including travel trailers and vehicles on the property, and the 1991 Ford Tempo. Dkt. # 62-2. Despite this authorization, Defendants contend that Sexton's consent was involuntary. Dkt. # 62 at 8-9.

Whether a person's consent to search was voluntary "is a question of fact to be determined from the totality of circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). The Ninth Circuit considers the following five factors to determine

---

[1] Even if the omitted facts were included in the search warrant affidavit there still would be overwhelming probable cause to justify the issuance of the search warrant.

ORDER DENYING MOTIONS - 4

whether consent was voluntarily given: "(1) whether the person was in custody; (2) whether the officers had their guns drawn; (3) whether a Miranda warning had been given; (4) whether the person was told that he had the right not to consent; and (5) whether the person was told that a search warrant could be obtained." United States v. Reid, 226 F.3d 1020, 1026 (9th Cir. 2000).

As to the first factor, Sexton was arrested at the time he gave conditional consent. As to the second factor, the testimony indicates that Detective Carver and Detective Bartlett had firearms when they discussed consent with Sexton, but there is no evidence that the weapons were drawn. The third and fourth factors favor a finding that Sexton's consent was voluntary because the detectives read him his Miranda rights more than once and he was informed that had the right not to consent. See Dkt. # 62-2. As for the fifth factor, the detectives did not tell Sexton that they could obtain a search warrant. Considering these five factors, the Court finds that Sexton's consent was voluntary. Sexton's execution of a consent form further supports the Court's conclusion that his consent to search the premises was voluntary. United States v. Childs, 944 F.2d 491, 496 (9th Cir. 1991). Regardless of whether the warrant applications were defective, the evidence seized during the search is admissible based on the Defendants' consent. United States v. Brown, 563 F.3d 410, 415 (9th Cir. 2009) ("[A warrantless] search conducted pursuant to a valid consent is constitutionally permissible.") (alteration in original) (citation omitted).

**C. Search of Other Vehicles**

    **1. Standing**

Defendants challenge the search of the Chevy Cheyenne truck located on the far side of the property because it exceeded the scope of the search warrant issued on October 25, 2011, and they did not consent to a search of the truck. Dkt. # 62 at 7-9.

Before Defendants may claim the protections of the Fourth Amendment, they must demonstrate that they had an expectation of privacy in the property searched and

ORDER DENYING MOTIONS - 5

that their expectation was reasonable. United States v. Reyes-Bosque, 596 F.3d 1017, 1026 (9th Cir. 2010). To meet this standard, Defendants must show "a subjective expectation of privacy in the area searched, and their expectation must be one that society would recognize as objectively reasonable." United States v. Sarkisian, 197 F.3d 966, 986 (9th Cir. 1999). Defendants bear the burden of "establishing that, under the totality of circumstances, the search or seizure violated their legitimate expectation of privacy." United States v. Silva, 247 F.3d 1051, 1055 (9th Cir. 2001).

The Court finds that Sexton and Kettells lack Fourth Amendment standing to challenge the search of the Chevy Cheyenne. First, a defendant's expectation of privacy in a car is very different from the traditional expectation of privacy in one's home. See Rakas v. Illinois, 439 U.S. 128, 148 (1978). Second, Defendants did not assert a possessory interest in either the truck or the property found inside and seized. Sarkisian, 197 F.3d at 987 ("though the failure to allege ownership of the items seized by itself, could not bar standing to challenge the search, it is a factor to be considered."). Third, during the evidentiary hearing, Michael Dhillon, the property owner, testified that when he rented a portion of the property and the trailers to Sexton, he expressly prohibited Sexton from accessing or using any vehicles or tools on the property. He gave Sexton permission to walk around the property, but not to touch or use any equipment. Although it is true that the truck was physically located on property rented by Defendants and Defendants had a key with which they could prohibit others from entering the property, these facts alone are insufficient to establish a reasonable expectation of privacy in the Chevy Cheyenne.

Under the totality of circumstances, Defendants have failed to show that they possessed a legitimate expectation of privacy in the Chevy Cheyenne and thus, Defendants lack standing to challenge the search and subsequent seizure of items found in the truck.

**2. Scope of Consent**

ORDER DENYING MOTIONS - 6

Even if Defendants had standing to challenge the search of the truck, the Court finds that the search was within the scope of Defendants' consent. After a detective read Defendants their Miranda rights, the Defendants had an opportunity to discuss whether or not they wanted to consent to a search of the property. During this conversation they agreed to allow detectives to search the entire property. Neither Defendant attempted to limit the search in any way and the consent form signed by Sexton clearly indicates that he consented to an unlimited search, including outbuildings, travel trailers and all vehicles. Dkt. # 62-2. He did not object when Detective Bartlett reviewed the entire form with him before he signed it.

### 3. Scope of Search Warrant

Finally, the Court finds that the search of the Chevy Cheyenne was within the scope of the search warrant. While Defendants are correct that the warrant incorrectly states that the property to be searched is located in Mill Creek, Washington, rather than in Lynnwood, Washington, this technical mistake is insufficient to suppress the evidence seized during the search. Other factors present in this case indicate that there "was virtually no chance that the executing officer would have any trouble locating and identifying the premises to be searched, or that he would mistakenly search another house." United States v. Turner, 770 F.2d 1508, 1511 (9th Cir. 1985). The property had been under surveillance before the warrant was sought; Defendants arrived at the property during the police surveillance; Defendants confirmed that they were living on the property; and the property intended to be searched was that actually searched. See id. (finding warrant description sufficiently particular even though it included the wrong street number of the house intended to be searched).

The warrant issued by Judge Middaugh on October 25, 2011, authorized a search of the entire Lynnwood property, and all travel trailers and outbuildings on the property. Dkt. # 62-6; Dkt. # 62-7. While Agent Woodbury was searching the property, she came across the Chevy Cheyenne. It was located on the far side of the property and had

ORDER DENYING MOTIONS - 7

become what appeared to be a more permanent structure, based on the surrounding overgrown plants. See Dkt. # 74-9. Based on the warrant's express authorization of a search of the property and the truck's appearance as an outbuilding, the Court concludes that the warrant reasonably encompassed the Chevy Cheyenne.

### III. CONCLUSION

For all of the foregoing reasons, the Court DENIES Defendants' motions to suppress evidence obtained as a result of the October 25, 2011, and October 27, 2011, searches (Dkt. # 60, 62).

DATED this 7th day of March, 2013.

*[signature]*
Robert S. Lasnik
United States District Judge

ORDER DENYING MOTIONS - 8