UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACK SEXTON and RONALD KETTELLS,<br><br>Defendants. | Case No.  CR11-383RSL<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO SUPPRESS STATEMENTS |

# I. INTRODUCTION

This matter comes before the Court on Defendant Ronald Kettells' "Motion for Voluntariness Hearing" (Dkt. # 59) and Defendant Jack Sexton's "Motion to Suppress Evidence of Custodial Statements Due to Fifth Amendment Violation" (Dkt. # 88). Kettells contends that his initial waiver of <u>Miranda</u> rights was involuntary, and therefore any statements he made before he invoked his right to counsel during the post-arrest interview with police officers must be suppressed. Instead of joining Kettells' motion, Sexton filed a separate motion to suppress, arguing that he unambiguously invoked his right to counsel shortly after beginning his interview and as a result, his statements to officers after this invocation should be suppressed. Based on the Court's review of the parties' memoranda and supporting documents, the remainder of the record, and the evidence presented during the evidentiary hearing, the Court finds as follows:

# II. DISCUSSION

ORDER GRANTING IN PART AND DENYING
IN PART MOTIONS TO SUPPRESS- 1

**A. Background**

Defendants are charged with conspiracy to commit bank robbery in violation of 18 U.S.C. § 2113(a), armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Dkt. # 76 at 1-3. Defendants are also charged with three counts of armed bank robbery and three counts of using a firearm during a crime of violence, relating to the August 8, 2011, robbery of a Key Bank in Seattle, Washington, the September 12, 2011, robbery of a Washington Federal bank in Seattle, Washington, and the October 20, 2011, robbery of a Wells Fargo Bank in Shoreline, Washington. Id. at 4-7. Sexton, but not Kettells, is charged with one count of bank robbery for the July 6, 2011, robbery of a Key Bank in Shoreline, Washington. Id. at 4.

On October 25, 2011, Defendants were arrested and taken to a Seattle Police Department building, where Seattle Police Department Detective Len Carver and King County Sheriff's Office Detective Christina Bartlett questioned them in separate, video and audio recorded sessions. A detective read Defendants their Miranda rights when they were first arrested and Detective Carver repeated these rights at the beginning of the interviews. Dkt. # 88-1 at 3. The detectives interviewed Sexton first. After a brief explanation of the investigation, the detectives began asking Sexton about his alleged involvement in a series of bank robberies. After a few minutes of conversation, Sexton commented that it would be best if he had a lawyer present:

> [Sexton]: What I'm saying is I need to talk to a lawyer or why can't I talk to a lawyer first and do all this that you say? I mean, that's a possibility too.
>
> [Bartlett]: That absolutely is a possibility.
>
> [Sexton]: (Inaudible)
>
> [Bartlett]: But if that's what you want to do, we can do that.
>
> [Sexton]: That would be the smartest thing to do.

ORDER GRANTING IN PART AND DENYING
IN PART MOTIONS TO SUPPRESS- 2

1     [Bartlett]: Maybe.

2     [Sexton]: Yeah, for both sides.

3     [Bartlett]: Tell me about that.

4     [Sexton]: For what? For both sides?

5     [Bartlett]: Yeah.

6     [Sexton]: Well, I just think it would be better for both sides to have an attorney and have it - - and I'll have my rights protected and (inaudible).

7-8     [Bartlett]: Yeah. The big - - the big right - - I mean, we went through your rights with you and what you have to pay attention to is just that last one. You have the right to exercise those at any time.

9     [Sexton]: I understand.

10-11     [Bartlett]: And all that I'm trying to do is give some of these women that were scared to death a little bit of peace, a little bit of empathy that - - a little bit of, you know, where they can - -

12 Id. at 9-10.

13-17     The detectives continued to discuss the robberies and question Sexton about his alleged involvement. A half hour later, Sexton told the detectives he wanted an attorney and he was finished with the interview. Id. at 41. Detective Bartlett and Detective Carver then began questioning Kettells. After approximately ten minutes of background questions, Kettells said "I want an attorney" and the interview ended.

**B. Analysis**

18-24     In Miranda v. Arizona, the Supreme Court established certain procedural safeguards to protect a suspect's right against compelled self-incrimination. 384 U.S. 436 (1966). Miranda requires that before law enforcement officers may question a suspect in custody, the suspect must be warned that he has the right to remain silent, that any statement he makes can and will be used against him, that he has the right to have counsel present during the questioning, and that if he cannot afford a lawyer, one will be appointed to represent him. Id. at 467-73. After a suspect is advised of his rights, he

26 ORDER GRANTING IN PART AND DENYING
IN PART MOTIONS TO SUPPRESS- 3

may waive these rights and respond to police questions. <u>North Carolina v. Butler</u>, 441 U.S. 369, 372-76 (1979). However, if at any time during the interrogation the suspect states that he wants an attorney, the questioning must stop until an attorney is present. <u>Edwards v. Arizona</u>, 451 U.S. 477, 484 (1981). "[I]t is inconsistent with <u>Miranda</u> and its progeny for authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." <u>Id.</u> at 485. If the officers continue to question the suspect without an attorney present, a heavy burden rests on the government to show that the suspect knowingly and intelligently waived his right to counsel. <u>Miranda</u>, 384 U.S. at 475.

**1. Defendant Sexton**

Sexton does not dispute that he voluntarily waived his <u>Miranda</u> rights when the interview first began. He does, however, contend that he unambiguously invoked his right to counsel when he said "[w]hat I'm saying is I need to talk to a lawyer . . . That would be the smartest thing to do . . . I just think it would be better for both sides to have an attorney and have it . . . I'll have my rights protected." Dkt. # 88-1 at 9-10.

Whether a suspect has invoked his right to counsel is an objective inquiry. <u>Davis v. United States</u>, 512 U.S. 452, 459 (1994). "Invocation of the <u>Miranda</u> right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire the assistance of an attorney.' " <u>Id.</u> (quoting <u>McNeil v. Wisconsin</u>, 501 U.S. 171, 178 (1991)). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," officers are not required to stop questioning the suspect. <u>Id.</u> (emphasis in original).

The government suggests that at most, Sexton's statements were ambiguous inquiries about his rights. Dkt. # 91 at 6-7. During the evidentiary hearing the

ORDER GRANTING IN PART AND DENYING
IN PART MOTIONS TO SUPPRESS- 4

detectives testified that they had no doubt that they could continue to question Sexton after he referenced a lawyer.  Relying on Sexton's inflection when he referred to a lawyer, the detectives believed he was inquiring about his right to an attorney rather than invoking that right.  That Sexton continued to answer the detectives' questions, Defendants argue, indicates that he did not invoke his right to counsel.  The Court does not find these arguments persuasive.

Although Sexton's initial statement that he needed to talk to a lawyer was followed by a question, his subsequent statement that he would have his rights protected was sufficient to invoke his right to counsel and stop the interview.  Considering the statements as a whole, the Court finds that Sexton unequivocally invoked his right to counsel.  The video recording of Sexton's interview further supports the Court's finding that "[a] reasonable police officer in the circumstances would understand the statement[s] to be a request for an attorney."  See Davis, 512 U.S. at 459.  Contrary to the government's argument, Sexton's inflection in no way suggests that he was merely inquiring about his rights.  Furthermore, the fact that Sexton responded to further interrogation after invoking his right to counsel is insufficient to constitute waiver.  Edwards, 451 U.S. at 484 ("when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.") .

Finally, even if Sexton's statements were equivocal, the detectives failed to clarify whether Sexton actually wanted to have a lawyer present.  Dkt. # 88-1 at 10.  Rather than clarifying Sexton's intentions, the detectives persisted in probing him for information about the robberies.  The interview continued without pause as the detectives tried to persuade Sexton to restore the witnesses' sense of peace and safety by talking.  Id. at 10-11.  The detectives failed to respect Sexton's request for an attorney,

ORDER GRANTING IN PART AND DENYING
IN PART MOTIONS TO SUPPRESS- 5

and continued in the very type of badgering that Edwards sought to protect against. Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1983).  Because the detectives did not immediately cease questioning Sexton after he unambiguously invoked his right to counsel, the Court GRANTS Sexton's motion to suppress.

**2. Defendant Kettells**

In his motion to suppress, Kettells seeks to suppress the statements he made during the brief period of time before he invoked his right to counsel because his initial waiver of his Miranda rights was involuntary.

To determine whether a suspect's waiver was voluntary, the Court considers the totality of circumstances. United States v. Harrison, 34 F.3d 886, 890 (9th Cir. 1994). The Court must determine "whether the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." Id. (quotations and citations omitted).  The inquiry regarding waiver has two dimensions: "waiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Berghuis v. Thompkins, - - - U.S. - - -, 130 S.Ct. 2250, 2260 (2010) (quotations and citation omitted).  An accused's waiver need not be express and may be implied where the prosecution shows that Miranda warnings were given, an accused understood his rights, and an accused later made an uncoerced statement. Id. at 2262.

The totality of circumstances indicates that Kettells' waiver was knowing and voluntary.  First, the evidence shows that Miranda warnings were given both at the time of arrest and again at the police station.  Second, there is ample evidence that Kettells understood his rights.  His clear and unambiguous request for counsel shortly after beginning the interview indicates that he was aware of his rights to stay silent and to

ORDER GRANTING IN PART AND DENYING
IN PART MOTIONS TO SUPPRESS- 6

have counsel present during the interview and that he had not previously invoked those rights. <u>United States v. Andaverde</u>, 64 F.3d 1305, 1314 (9th Cir. 1995). Finally, there is no indication that the detectives used coercion or intimidation to provoke Kettells' statements. Kettells does not claim that the officers threatened him or injured him during the interviews.

### III. CONCLUSION

For all of the foregoing reasons, the Court finds that both Sexton and Kettells voluntarily made statements to the police until each invoked his right to counsel and the Court GRANTS Defendant Sexton's motion to suppress (Dkt. # 88). The Court DENIES Kettells' motion to suppress (Dkt. # 59).

DATED this 7th day of March, 2013.


*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART AND DENYING
IN PART MOTIONS TO SUPPRESS- 7