UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACK PERSHING SEXTON,<br><br>Defendant. | Case No. CR11-383-RSL<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant's "Motion for Release or Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)." Dkt. # 244. Having considered the motion and the record contained herein, the Court finds as follows:

## I. PROCEDURAL MOTIONS

As an initial matter, the Court finds compelling reasons justify sealing defendant's records containing sensitive information (Dkts. # 246, # 247, # 252, # 258). The parties' respective motions to seal (Dkts. # 245, # 251, # 256) are accordingly GRANTED. The parties' respective motions to file overlength briefs (Dkts. # 243, # 253, # 255) are also GRANTED.

## II. BACKGROUND

Defendant is a 74-year-old inmate currently incarcerated at the Medical Center for Federal Prisoners at Springfield Missouri ("Springfield MCFP"). Dkts. # 244 at 2, # 254 at 7. On March 27, 2013, a jury convicted defendant of conspiracy in violation of 18 U.S.C. § 371, three counts of armed bank robbery in violation of 18 U.S.C. § 2113(a), (d), and three counts of using a firearm during and in relation to a crime of violence in violation of 18 U.S.C.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 1

§ 924(c)(1)(A)(ii). See Dkt. # 142 (minute entry for announcement of jury verdict); Dkt. # 76 (superseding indictment). On June 21, 2013, the Court sentenced defendant to thirteen years for the conspiracy count and armed bank robbery counts, seven years for the first § 924(c) conviction, and two twenty-five-year sentences for the other two § 924(c) convictions. Dkt. # 163 at 3. These sentences run consecutive such that defendant was sentenced to seventy years imprisonment altogether. Dkts. # 163 at 3, # 244 at 4, # 254 at 2. Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on October 4, 2071. Dkt. # 244 at 4. He now moves for compassionate release.

### III. LEGAL FRAMEWORK

The compassionate release statute provides narrow grounds for defendants in "extraordinary and compelling" circumstances to be released from prison early. See 18 U.S.C. § 3582(c). The First Step Act of 2018 amended the procedural requirements governing compassionate release. See id. Prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release. The Director rarely filed such motions. See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). Congress amended the statute to allow defendants to directly petition district courts for compassionate release. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part,

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> (ii) . . .
>
> and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). Section 994(t) provides,

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2),

extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) **Medical Condition of the Defendant**—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an

> extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).
>
> 2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.
>
> 3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.
>
> 4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.
>
> This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13. The Ninth Circuit has recently held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." United States v. Aruda, 993 F.3d 797, 798 (9th Cir. 2021). The Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but the policy statement is not binding. Id.; see United States v. Van Cleave, Nos. CR03-247-RSL, CR04-125-RSL, 2020 WL 2800769, at *3–5 (W.D.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 5

Wash. May 29, 2020) (referring to the guidance of U.S.S.G. § 1B1.13 as "persuasive, but not binding").

### IV. DEFENDANT'S CIRCUMSTANCES

#### a. Exhaustion Requirement

Prior to considering the merits of defendant's motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). The parties agree that defendant satisfied this requirement. Dkts. # 244 at 9–10, # 254 at 13. On April 28, 2020, defendant submitted a request for compassionate release to the Warden, to which the Warden at Springfield MCFP did not respond. Dkt. # 244-6 at 1. Defendant's attorney also presented a compassionate release request to the Warden on defendant's behalf on December 9, 2020. See Dkts. # 244-6 at 6, # 244-9. Thirty days have since lapsed such that the Court finds defendant has exhausted his administrative remedies, and the Court will consider the merits of his motion for compassionate release.

#### b. "Extraordinary and Compelling" Circumstances

Defendant's motion for compassionate release is based on several arguments: (1) his age and health, including the effects of a traumatic injury he suffered after being attacked by a fellow inmate; (2) vulnerability to COVID-19; and (3) changes in sentencing law. See Dkt. # 244 at 11–22. With respect to defendant's first argument, defendant brings the Court's attention to an assault that he experienced during his incarceration. In 2015, defendant was attacked by another inmate who struck defendant in the head with a lock in a sock, which resulted in multiple skull fractures and a cerebral hemorrhage. Dkts. # 246-1 at 1, # 246-2. Defendant underwent surgery, which involved replacing a portion of the bone with plates and screws. Dkt. # 246-2. Following the attack, defendant was referred to physical therapy for his "traumatic intracranial hemorrhage with [left] hemiparesis [(weakness or the inability to move on one side of the body)]." Dkt. # 246 at 12; Hemiparesis, American Stroke Association, https://www.stroke.org/en/about-stroke/effects-of-stroke/physical-effects-of-stroke/physical-impact/hemiparesis (last visited June 2, 2021). For a period of time, defendant received

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 6

nutritional supplements through a feeding tube. See Dkt. # 246 at 15, 36 (reflecting that defendant used a feeding tube in 2015 but that in 2017 defendant was feeding himself "with no adaptive feeding devices"); Dkt. # 246-1 at 1 (noting that defendant used "PEG tube for feeding post long hospital stay in intensive care unit"). While defendant's condition has improved substantially since his injury, defendant's medical records reflect that he continues to suffer from "peripheral neuropathy" (i.e., muscle weakness and atrophy, pain, and numbness) due to his injury, as well as "left hemiplegia" (i.e., total or partial paralysis of one side of the body). Dkt. # 258 at 1; see Merriam-Webster, https://www.merriam-webster.com/dictionary/ (last visited June 2, 2021) (used to define "peripheral neuropathy" and "hemiplegia"). Consistent with these health concerns, defendant's declaration reflects that he has problems with balance and strength on the left side of his body, and he needs to use something to help him balance. Dkt. # 244-6 at 3–5. Defendant reports that the weakness on his left side causes him to "drag [his] left foot sometimes," and he has experienced problems "with stumbling and falling." Dkt. # 244-6 at 4. BOP records document that defendant has been issued an elevator pass, a cane, and a walker. Dkt. # 246-3 at 221. During the course of defendant's work sweeping hallways (for about three to four hours a day), defendant explains that he uses the broom to keep his balance and tries to stay near a wall, in the event he should stumble or fall. Dkt. # 244-6 at 4. Defendant also reports that his left hand is not fully functional such that he cannot tie shoelaces or button a shirt. Dkt. # 244-6 at 4. According to defendant, who is now 74 years old, he has "trouble with some aspects of daily living," but he can still care for himself, feed himself, and "get from one place to another helped by a cane or a walker or some other device [that] helps with [his] balance." Dkt. # 244-6 at 5.

Defendant's medical records also document that he suffers from chronic pain due to orthopedic issues, including osteoarthritis of the hip and knee. Dkt. #258 at 1. In addition, defendant has Paget's Disease, a condition that makes him more susceptible to bone fractures. Id.; see Paget's Disease of Bone, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/pagets-disease-of-bone/symptoms-causes/syc-20350811 (last visited June 2, 2021).

Defendant also suffers from multilevel degenerative disc disease and degenerative joint disease. PSR ¶ 113.

Defendant argues that his circumstances related to age and health are "extraordinary and compelling" because they are encompassed by the policy statement commentary defining this term, specifically, U.S.S.G. § 1B1.13 Note 1(B) ("Age of the Defendant") and 1(A)(ii) ("Medical Condition of the Defendant"). See Dkt. # 244 at 13 ("Mr. Sexton . . . qualifies for compassionate release under Application Note 1(B) of USSG § 1B1.13. He separately qualifies under Application Note 1(A)(ii)"). Defendant also argues that the Court may go beyond the policy statement in determining whether circumstances warrant a sentence reduction. Dkt. # 244 at 19–21. The government argues that the policy statement is binding and that defendant's circumstances are not extraordinary and compelling because they "do not fall within the scope" of the policy statement. Dkt. # 254 at 13–14. Under Note 1(B), extraordinary and compelling reasons exist based on age when the "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). The government only contests defendant's ability to meet condition (ii) of Note 1(B), arguing that defendant's hemiparesis was "largely the result of the assault that he suffered in 2015 . . . . not, primarily, a result 'of the aging process.'" Dkt. # 254 at 14. As stated above, however, the Ninth Circuit recently held (after the parties briefed this matter) that the policy statement at issue is *not* binding, though Courts may consider it when exercising their discretion. Aruda, 993 F.3d at 802. Given that the Court need not rely on U.S.S.G. § 1B1.13 Note 1(B), the fact that defendant's hemiparesis/hemiplegia was primarily caused by the 2015 assault, not the aging process, does not prevent the Court from exercising its discretion to consider defendant's circumstances extraordinary and compelling. If anything, serious deterioration in a defendant's health arising from the aging process alone strikes the Court as far more ordinary than the deterioration this defendant faces from the effects of the attack he suffered, his other medical conditions, and aging generally. The Court concludes that defendant has established that extraordinary and compelling circumstances exist based on the

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 8

attack and traumatic injury he suffered during his incarceration, the aftermath of that attack, his age, and his present medical conditions. Because the Court finds in defendant's favor on his first argument regarding extraordinary and compelling circumstances, it is not necessary to address the second and third arguments defendant raises.

### c. Additional Considerations

Prior to granting compassionate release, the Court must assess whether a sentence reduction would be consistent with any applicable sentencing factors set forth in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A). The factors include: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; to adequately deter criminal conduct; "to protect the public from further crimes of the defendant"; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a); see also United States v. Grimes, No. CR11-5509 BHS, 2021 WL 319404 (W.D. Wash. Jan. 26, 2021) (summarizing factors).

The nature and circumstances of the offense and defendant's history and characteristics weigh against releasing defendant or reducing defendant's sentence. The offenses for which defendant has served the current term of imprisonment are extremely serious, and he committed them at the age of 64. See PSR ¶¶ 6–9. Defendant, along with his co-defendant, Ronald Kettells, robbed three banks. During the course of the robberies, defendant threatened the victims with a firearm and death threats. PSR ¶¶ 6–9. The robberies had a devastating impact on their victims, affecting various victims' mental and/or physical health. See Dkt. # 158 (victim impact statements). And defendant was not new to crime when he committed these offenses, but rather, he had effectively "spent his lifetime committing numerous very serious and violent crimes," PSR ¶ 134, including, for example, burglary, assault and battery, and bank robbery. PSR ¶¶ 51–

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 9

81. Defendant underwent psychological assessments during previous terms of incarceration and "has been assessed as having antisocial personality traits." PSR ¶ 114. Notably, defendant's previous supervising probation officers described him as "'institutionalized' and related that he does not know how to exist in the community." PSR ¶ 112. Altogether, this factor weighs heavily against granting defendant's motion.

One of the more nuanced factors for the Court to evaluate here is the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Defendant has served approximately 10 years of his 70-year sentence. See Dkt. # 244 at 4 (asserting that defendant has been in custody for over nine years and four months and has served over 10 years with good time credit); Dkt. # 254 at 7, 14–15 (asserting that defendant has served nine years and four months and not contesting defendant's ability to meet the 10 years of service criterion under U.S.S.G. § 1B1.13, cmt. n.1(B)). If defendant were sentenced today using the new sentencing principles for § 924(c) offenses, and assuming that the sentence on the conspiracy and armed bank robbery counts remained the same, his sentence would be 34 years. Dkt. # 254 at 17. Thus, defendant is still asking for a significant shortening of his sentence, which tends to cut against compassionate release where defendant's offenses are as serious as they are here. That said, defendant's experience in incarceration has been particularly harsh in that he suffered a traumatic brain injury after being attacked by another inmate, an injury that still affects him today. Defendant's incarceration during the COVID-19 pandemic is also relevant, though to a lesser degree than the attack he experienced. Defendant became infected with COVID-19 during his incarceration, a disease for which he is more vulnerable than others due to his age, obesity, and history of smoking. See Dkt. # 246 at 20, 51 (referring to defendant's history of smoking); Dkt. # 246-3 at 271 (reflecting a BMI of 31.28 in August 2020); People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 2, 2021) (reporting that older adults are more likely to get severely ill from COVID-19 and that being obese or a former smoker can also make you more likely to get severely ill); Healthy Weight, Nutrition, and Physical Activity, CDC, https://www.cdc.gov/healthyweight/assessing/bmi/adult_

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 10

bmi/index.html (last visited June 2, 2021) (defining obesity as a BMI of 30 and above). Defendant has since recovered and been vaccinated. Dkt. # 252. On balance, the Court finds that this factor weighs against defendant. While the adversity that defendant has experienced during his term of incarceration indicates that the years defendant has served have been more impactful and challenging than the Court could have predicted, the Court nevertheless finds that a release or reduction in sentence is not consistent with the seriousness of the offenses here and the need to promote respect for the law and provide just punishment.

The Court finds that considering the need to adequately deter criminal conduct and to protect the public involves evaluating defendant's present physical limitations and recent prosocial behavior in addition to defendant's long history of destructive patterns and antisocial behavior. The Presentence Investigation Report specifically noted "the very high risk he poses to continue committing further crimes." PSR ¶ 134. Given the deterioration of defendant's health since that report was issued, however, his physical ability to participate in future criminal activity has necessarily been limited. The government asserts that defendant could still hold a gun or act as a lookout, Dkt. # 254 at 19, and while the Court acknowledges that it is possible that defendant could commit a crime, defendant's limited mobility and the limited functionality of one of his hands indicate that he presents a much lower risk to the public than he did when he was first sentenced. Additionally, defendant's desire to abuse drugs also appears to have been affected by his experiences during incarceration, which is relevant because, as the government observes, "[m]any of Sexton's crimes were fueled by his chronic addiction to heroin and other drugs." Dkt. # 254 at 19 n.4. Defendant's declaration states as follows: "With my injuries, my health, and my age, I seem to have lost the desire to take opiates to get high." Dkt. # 244-6. Although defendant's medical records establish that defendant has no reported misuse of his pain medication, Dkt. # 258 at 1, defendant has not highlighted any evidence of him participating in substance abuse treatment, and the Court is concerned about the danger defendant may present to the public in the event of a relapse outside his current institutional setting. Defendant's current work sweeping hallways and his time spent volunteering with the Inmate Companion Program reflects that defendant has been able to provide valuable services to

his facility and to his fellow inmates, which suggests a positive shift from his previous history of destructive and antisocial behaviors. See Dkt. # 244-6 at 3–4, 11–12. While the Court commends defendant on this progress, defendant's history of absconding from federal halfway houses and his extremely poor behavior during previous terms of supervised release, see, e.g., PSR ¶¶ 78–81, ultimately lead the Court to conclude that the need to protect the public and deter criminal conduct cuts against compassionate release or sentence reduction.

Defendant's rehabilitation needs, however, weigh in favor of a sentence reduction sooner rather than later because release planning may be more challenging as defendant grows older and his health continues to decline. See Dkt. # 247 at 4 (conveying a social worker's belief that it is to the benefit of the community and defendant to "reenter the community with his most valuable resource intact: his functional independence" and that "[s]ecuring stable housing will certainly become more challenging as time passes and [defendant's] mobility and physical limitations continue to deteriorate"); Dkt. # 244-1 at 5 (conveying the opinion of a former Assistant Director of the BOP and a former Warden at a medical center that as defendant's medical status deteriorates, placement at a Residential Re-entry Center (RRC) "is much more challenging and may not be possible"). The Court finds that this factor favors defendant. See id.

Due to the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, it is relevant that the Court denied a motion for reduction of sentence made by the co-defendant in this matter, Mr. Kettells, who this Court had also sentenced to 70 years in prison. Mr. Kettells had moved for his sentence to be reduced to 20 years of incarceration followed by five years of supervised release, and the primary basis for his motion was the severity of his sentence based on the mandatory stacking provisions of § 924(c). United States v. Kettells, No. CR11-383RSL, 2020 WL 7260448, at *3 (W.D. Wash. Dec. 10, 2020). The primary basis for the current motion is distinct, however. See Dkt. # 257 at 8 (describing the primary basis as defendant's "victimization in prison, the aftermath of that attack, and his present medical conditions"). Moreover, there are at least two significant differences between Mr. Kettells and defendant that may justify different outcomes. One difference is their disciplinary records. Defendant's most recent disciplinary infraction was

in 2016 for permitting another inmate to use his phone account, and this is defendant's only disciplinary infraction since he was assaulted in 2015. Dkt. # 246-5 at 1. Mr. Kettells, by contrast, had a disciplinary infraction as recently as 2020. Exhibit 1 at 1, Kettells, 2020 WL 7260448 (Dkt. # 239-1) ("Inmate refused staff order and disregarded the unknown item into his mouth"). Additionally, Mr. Kettells' disciplinary infractions included some violence, such as assaulting another inmate in 2015. Exhibit 1 at 5, Kettells, 2020 WL 7260448 (Dkt. # 239-1). Defendant's disciplinary record does not reflect any similar violence, see Dkt. # 246-5, and he currently serves as a volunteer assisting his fellow inmates (e.g., "by bringing them water or helping them write letters and make phone calls"). Dkt. # 244-6 at 4. A second difference between defendant and Mr. Kettells is that while Mr. Kettells assaulted another inmate in prison, defendant was *the victim* of an assault, and the traumatic injury defendant suffered has taken a significant toll on defendant's health, as elsewhere described in this Order. Therefore, the Court finds that this factor would not prevent the Court from treating defendant's motion differently from Mr. Kettells' motion.

Considering the applicable sentencing factors set forward in 18 U.S.C. § 3553(a), and defendant's extraordinary and compelling circumstances, the Court DENIES defendant's motion for compassionate release. Although the Court considers this motion to require a challenging exercise of discretion, based on the Court's evaluation of the current record, the majority of the relevant factors weigh against compassionate release or a reduction in sentence. That said, defendant is not precluded from moving for compassionate release in the future. Potential evidence that could affect the compassionate release analysis may include, for example, statements by BOP staff, treatment providers, fellow inmates, etc., regarding any progress by defendant in engaging in prosocial behaviors. The Court would also look anew at any health conditions or other relevant factors.

### IV.  CONCLUSION

For all the foregoing reasons, defendant's motion for compassionate release (Dkt. # 244) is DENIED. The parties' respective motions to seal (Dkts. # 245, # 251, # 256) are GRANTED.

The parties' respective motions to file overlength briefs (Dkts. # 243, # 253, # 255) are also GRANTED.

DATED this 3rd day of June, 2021.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 14