UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACK PERSHING SEXTON,<br><br>Defendant. | Case No. CR11-383-RSL<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on defendant's "Renewed Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)." (Dkt. # 262). Having considered the motion and the record contained herein, the Court finds as follows:

**I.    PROCEDURAL MOTIONS**

As an initial matter, the Court finds compelling reasons justify sealing defendant's records containing sensitive information (Dkt. # 264). Defendant's motion to seal (Dkt. # 263) is accordingly GRANTED.

Defendant's motion to file an overlength reply (Dkt. # 268) is also GRANTED.

**II.    BACKGROUND**

Defendant is a 75-year-old inmate currently incarcerated at FDC SeaTac. See Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited Nov. 9, 2022).[1]

---

[1] From 2015 until recently, defendant was in custody at the Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP Springfield"). Dkt. # 244 at 2.

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 1

On March 27, 2013, a jury convicted defendant of conspiracy in violation of 18 U.S.C. § 371, three counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and three counts of using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  See Dkt. # 149 (jury verdict); Dkt. # 76 (superseding indictment).  On June 21, 2013, the Court sentenced defendant to 13 years' imprisonment for the conspiracy count and armed bank robbery counts, seven years' imprisonment for the first § 924(c) count, and 25 years' imprisonment for each of the other two § 924(c) counts.  Dkt. # 163 at 3.  These sentences run consecutively, meaning the Court sentenced defendant to 70 years' imprisonment in total.  Id. at 3.  Defendant is currently scheduled for release from the custody of the Federal Bureau of Prisons ("BOP") on October 4, 2071.  Dkt. # 262-3 at 3.

This is defendant's second motion for compassionate release.  The Court entered an Order denying defendant's first motion for compassionate release on June 3, 2021 (Dkt. # 260) (the "First Order").  In the First Order, the Court concluded that defendant had established extraordinary and compelling circumstances warranting his release based on an attack and traumatic injury he suffered during his incarceration, the aftermath of that attack, his age, and his present medical conditions.  Dkt. # 260 at 8-9.  However, the Court denied defendant's motion, finding that the factors listed in 18 U.S.C. § 3553(a) did not, on balance, support defendant's release at that time.  See id. at 9-13.  The Court noted that defendant was not precluded from moving for compassionate release again in the future, and stated, "Potential evidence that could affect the compassionate release analysis may include, for example, statements by BOP staff, treatment providers, fellow inmates, etc., regarding any progress by defendant in engaging in prosocial behaviors.  The Court would also look anew at any health conditions or other relevant factors."  Id. at 13.

Defendant now moves again for compassionate release and includes new evidence responsive to the Court's instruction.

### III.   LEGAL FRAMEWORK

"A federal court generally 'may not modify a term of imprisonment once it has been imposed.'"  Dillon v. United States, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)).

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 2

Congress has provided an exception to that rule, known as compassionate release, which allows the Court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c); see also United States v. Aruda, 993 F.3d 797, 799 (9th Cir. 2021); United States v. Keller, 2 F.4th 1278, 1281 (9th Cir. 2021). The First Step Act of 2018 amended the procedural requirements governing compassionate release. Whereas prior to the First Step Act's passage, only the Director of the BOP could bring motions for compassionate release, the amended statute allows defendant to directly petition the Court for compassionate release. See id. As amended, 18 U.S.C. § 3582(c)(1)(A) states in relevant part:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> (ii) . . .
>
> and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context. See 28 U.S.C. § 994(t). Section 994(t) provides:

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 3

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13. In relevant part, the policy statement provides,

> **Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**
>
> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—
>
> > (1)(A) Extraordinary and compelling reasons warrant the reduction;
> > . . .
> > (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> > (3) The reduction is consistent with this policy statement.
>
> **Commentary**
>
> **Application Notes:**
>
> > 1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> >
> > > (A) **Medical Condition of the Defendant**—
> > >
> > > > (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 4

        (ii)    The defendant is—

              (I)    suffering from a serious physical or medical condition,

              (II)    suffering from a serious functional or cognitive impairment, or

              (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances.**—

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

2. **Foreseeability of Extraordinary and Compelling Reasons.**—For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 5

3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

4. **Motion by the Director of the Bureau of Prisons.**—A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and whether the defendant is a danger to the safety of any other person or to the community.

This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13. However, the Ninth Circuit has held that U.S.S.G. § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." Aruda, 993 F.3d at 798, 802. The Court may consider U.S.S.G. § 1B1.13 in exercising its discretion, but the policy statement is not binding. Id.

## IV. DEFENDANT'S CIRCUMSTANCES

In deciding whether to grant defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1), the Court considers: (A) whether defendant has met the statutory exhaustion requirement for compassionate release, (B) whether "extraordinary and compelling reasons warrant such a reduction," and (C) the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable. See Keller, 2 F.4th at 1283-84 (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

### A. Exhaustion Requirement

Prior to considering the merits of defendant's motion, the Court determines whether he has met the statutory exhaustion requirement. Where, as here, the Director of the BOP has not

filed the motion on defendant's behalf, the Court may only consider the motion over the government's objection if defendant has requested that the BOP make such a motion and either (i) defendant has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (ii) 30 days have elapsed since the "warden of the defendant's facility" received a compassionate-release request from defendant. Keller, 2 F.4th at 1281 (quoting 18 U.S.C. § 3582(c)(1)(A)). The Ninth Circuit has held that while § 3582(c)(1)(A)'s administrative exhaustion requirement does not deprive the Court of subject-matter jurisdiction, it is mandatory and must be enforced when properly raised by the government. Id. at 1282.

The parties agree that defendant has satisfied the exhaustion requirement. See Dkts. # 262 at 4, # 267 at 8. The Court therefore considers the merits of defendant's motion for compassionate release.

## B. "Extraordinary and Compelling" Circumstances

Defendant's renewed motion for compassionate release relies on the Court's conclusion in the First Order that defendant had successfully shown "extraordinary and compelling" circumstances and does not re-argue that determination. See Dkt. # 262 at 1-2. In the First Order, the Court concluded that "defendant has established that extraordinary and compelling

circumstances exist based on the attack and traumatic injury he suffered during his incarceration,[2] the aftermath of that attack,[3] his age, and his present medical conditions."[4]

The government asks the Court to revisit its determination that defendant's circumstances are extraordinary and compelling. The government argues, "As the Warden explained and as shown in Sexton's medical records, Sexton's medical conditions have improved since this Court denied his first motion. His recent hand surgery should help him with small motor activities and improve his ability to use his left hand. Even before the surgery, Sexton remained able to provide self-care." Dkt. # 267 at 9 (citing Dkts. # 244-6 at 5, # 266-2).

The Court declines the government's invitation to revisit its earlier conclusion that defendant has successfully shown "extraordinary and compelling" circumstances. While the Warden's denial does not explain in what way defendant's health has improved over the past year, Dkt. # 262-2 at 5, defendant's medical records show that he underwent cataract surgery to improve vision in his left eye in September 2021 and left-hand surgery to address a

---

[2] In 2015, defendant was attacked by another inmate who struck defendant in the head with a lock in a sock, which resulted in multiple skull fractures and a cerebral hemorrhage. Defendant underwent surgery, which involved replacing a portion of the bone with plates and screws. Dkt. # 260 at 6 (citing Dkts. # 246 at 12, # 246-1 at 1, # 246-2; American Stroke Association, Hemiparesis, https://www.stroke.org/en/about-stroke/effects-of-stroke/physical-effects-of-stroke/physical-impact/hemiparesis (last visited June 2, 2021)).

[3] While defendant's condition had improved substantially between his injury and the First Order, the Court found that defendant's medical records reflected that he continued to suffer from "peripheral neuropathy" (i.e., muscle weakness and atrophy, pain, and numbness) due to his injury, as well as "left hemiplegia" (i.e., total or partial paralysis of one side of the body), and that, consistent with these health concerns, he had problems with balance and strength on the left side of his body, and he needed to use something to help him balance. Dkt. # 260 at 7 (citing Dkts. # 244-6 at 3-5, # 258 at 1; Merriam-Webster, https://www.merriam-webster.com/dictionary/ (last visited June 2, 2021) (used to define "peripheral neuropathy" and "hemiplegia")).

[4] In the First Order, the Court found that defendant's medical records indicated that he suffered from (i) chronic pain due to orthopedic issues, including osteoarthritis of the hip and knee, (ii) Paget's Disease, a condition that makes him more susceptible to bone fractures, and (iii) multilevel degenerative disc disease and degenerative joint disease. Dkt. # 260 (citing Dkt. # 258 at 1; Mayo Clinic, Paget's Disease of Bone, https://www.mayoclinic.org/diseases-conditions/pagets-disease-of-bone/symptoms-causes/syc-20350811 (last visited June 2, 2021); PSR ¶ 113).

"Dupuytren's contracture"[5] in November 2021. Dkt. # 264-1 at 33-34. The Court did not consider defendant's cataract or Dupuytren's contracture in the First Order. The Court did consider defendant's weakness on the left side of his body, consistent with peripheral neuropathy and left hemiplegia, and his reduced left-hand function such that he could not tie his shoelaces or button a shirt. Dkt. # 260 at 7 (citing Dkts. # 244-6 at 3-5, # 246-3 at 221). Defendant's pre-surgery medical records indicate that the Dupuytren's contracture was a separate concern from defendant's chronic spasticity, diminished sensibility, and motor weakness in his upper left extremity. Dkt. # 264 at 35. These records also indicate that he continues to suffer from hemiplegia, neuropathy, and chronic pain due to trauma. Dkt. # 264 at 1-7.[6] Defendant's most recent medical records also report that he continues to rely on a four-wheeled walker and to suffer from osteoarthritis of the hip and knee, Paget's disease, and spondylosis.[7] Id. at 1-2. In short, it appears that while defendant has received "essential treatment interventions to address his chronic conditions," Dkts. # 262 at 9, # 262-7 at 1, the conditions that the Court considered in the First Order remain unabated.

Additionally, the Warden's denial indicates that defendant's request was reviewed under BOP Program Statement 5050.50. This Program Statement sets a significantly higher bar for compassionate release than the non-binding Application Note to U.S.S.G. § 1B1.13 and the discretion afforded to the Court under 18 U.S.C. § 3582(c). *Compare* BOP Program Statement 5050.50 § 3(b) ("The BOP should consider a [reduction in sentence] if the inmate is: [(i)] Completely disabled, meaning the inmate cannot carry on any self-care and is totally confined to

---

[5] A Dupuytren's contracture is a hand deformity wherein knots of tissue form under the skin and eventually create a thick cord that can pull one or more fingers into a bent position. Mayo Clinic, Dupuytren's Contracture, https://www.mayoclinic.org/diseases-conditions/dupuytrens-contracture/symptoms-causes/syc-20371943 (last visited Nov. 9, 2022).

[6] While the Court does not give the same weight to this evidence as to defendant's medical records, a fellow inmate reported that defendant "can hardly use his right hand." Dkt # 264-1 at 2. Notably, defendant's right hand is not the hand that underwent surgery for Dupuytren's contracture.

[7] Spondylosis is "an umbrella term for different forms of age-related degeneration of the spine." Columbia University Irving Medical Center, Spondylosis, https://www.neurosurgery.columbia.edu/patient-care/conditions/spondylosis (last visited Nov. 9, 2022).

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 9

a bed or chair; or [(ii)] Capable of only limited self-care and is confined to a bed or chair more than 50% of waking hours.") *with* Application Note 1 to U.S.S.G. § 1B1.13 (requiring a condition, impairment, or aging-based deterioration that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover") *and* 18 U.S.C. § 3582(c) (requiring a finding that "extraordinary and compelling reasons warrant such a reduction"). The Court therefore does not find the Warden's denial of defendant's request persuasive.

The Court adopts its prior conclusion that defendant has successfully shown "extraordinary and compelling" circumstances.

### C. Sentencing Factors

Prior to granting compassionate release, the Court must assess whether a sentence reduction would be consistent with any applicable sentencing factors set forth in 18 U.S.C. § 3553(a). See 18 U.S.C. § 3582(c)(1)(A); see also Keller, 2 F.4th at 1284. The factors include: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," (ii) the need for the sentence imposed (1) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (2) to adequately deter criminal conduct and "to protect the public from further crimes of the defendant," and (3) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," (iv) the sentencing guidelines, and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a); see also United States v. Grimes, No. CR11-5509 BHS, 2021 WL 319404 (W.D. Wash. Jan. 26, 2021) (summarizing factors).

#### i. Nature and Circumstances of the Offense and Defendant's History and Characteristics

The Court first considers "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). In the First Order, the Court concluded that the nature and circumstances of the offense and defendant's history and

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 10

characteristics weighed against releasing defendant or reducing defendant's sentence. See Dkt. # 260 at 9-10. The offenses for which defendant is currently imprisoned are extremely serious, he committed them at the age of 64, and they had a devastating impact on the victims. Id. (citing PSR ¶¶ 6-9; Dkt. # 158 (victim impact statements)). Defendant was not new to crime when he committed these offenses, but rather, he had effectively "spent his lifetime committing numerous very serious and violent crimes," id. (quoting PSR ¶ 134), including, for example, burglary, assault and battery, and bank robbery, id. (citing PSR ¶¶ 51-81). The Court also noted that defendant underwent psychological assessments during previous terms of incarceration and was "assessed as having antisocial personality traits." Id. (quoting PSR ¶ 114).

However, the Supreme Court has instructed that evidence of post-sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors including, in particular, "the history and characteristics of the defendant." Pepper v. United States, 562 U.S. 476, 491 (2011) (quoting 18 U.S.C. § 3553(a)(1)); United States v. Trujillo, 713 F.3d 1003, 1010 (9th Cir. 2013); see also Concepcion v. United States, 142 S. Ct. 2389, 2400-03 (2022) (noting with approval the practice of considering post-sentencing rehabilitation at resentencing or in deciding First Step Act motions). District courts have concluded that a prisoner's post-sentencing rehabilitation and conduct in prison can tip the § 3553(a) analysis towards a finding that compassionate release is warranted. See, e.g., United States v. Jones, 482 F.Supp.3d 969, 983-84 (N.D. Cal. 2020); United States v. Kanohokula, 572 F.Supp.3d 895, 904-05 (D. Haw. 2021); United States v. Moore, No. CR15-101-TMB, 2021 WL 4492853 (D. Alaska Sept. 30, 2021). Furthermore, the Court notes that evidence of defendant's positive behavior in prison is especially compelling where defendant is facing a life sentence, or – as here – has no reasonable expectation of release. See United States v. Lopez, No. CR97-01117-ACK, 2020 WL 6298061, at *4 & n.3 (D. Haw. Oct. 27, 2020) (citing United States v. Millan, No. CR91-685-LAP, 2020 WL 1674058, at *8 (S.D.N.Y. Apr. 6, 2020)).

In response to the Court's request in its First Order, defendant has submitted new evidence going to his post-sentencing history and characteristics in the form of letters and interviews of support highlighting his prosocial behavior at MCFP Springfield. These new

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 11

attestations support a reconsideration of the applicable § 3553(a) factors, and the Court finds that they tip the scales in defendant's favor.

Despite his health issues, defendant not only found work at MCFP Springfield as an orderly but appears to have also found success in this role. Dkt. # 262-3 at 3. Letters from both nurses working in the facility and fellow inmates commend defendant for his positive attitude and professional demeanor. Dkt. # 262-4 at 6 (letter from retired BOP nurse describing defendant as a "good employee" who "worked very hard," was "very respectful of the staff and [his] peers," and "was never a discipline problem"); Id. at 7 (letter from current BOP nurse stating, "Jack Sexton is an exception to the rule, he remains courteous to staff and is willing to assist others."); Id. at 5 (letter from fellow inmate Jerry Walsh[8] noting defendant "is well thought of by the medically infirmed patients and the staff on [the floor where he held a paying job cleaning inmates' rooms and hallways].").

Defendant's conduct outside of his work as an orderly further supports the conclusion that he has become increasingly prosocial. As noted in the First Order, defendant volunteers through the Inmate Companion Program where he assists his fellow inmates (e.g., "by bringing them water or helping them write letters and make phone calls"). Dkt. # 244-6 at 4. Additionally, letters from fellow inmates illustrate that defendant continues to offer help and support outside the formal volunteer program. Dkt. # 262-4 at 4 (letter from Walsh noting "Sexton helps fellow patients with mobility problems, visual[l]y impaired and seizures prone

---

[8] While Mr. Walsh was a fellow inmate of defendant, he is unusually positioned to assess defendant's character. "Mr. Walsh is a retired drug and alcohol counselor, formerly holding licenses to practice in Arkansas and Louisiana. He held an active license in Arkansas for 20 years and estimates 7 or 8 years in Louisiana. He was 'trauma certified' with the American Psychological Association. He has worked with thousands of youth and adults in the criminal legal system as a professional." Dkt. # 262-4 at 1. Mr. Walsh served as the executive director of a nonprofit organization providing youth services for troubled juveniles and was serving a sentence related to a kickback scheme pursuant to which he diverted nonprofit funds to lobbyists and politicians in exchange for preferential treatment in securing and protecting state contracts. See J.D. Bailey, Former SAYS Director Walsh Sentenced to 30 Months in Federal Prison, Ordered to Pay $515,000 in Restitution for Bribery Scheme, Banner-News (Feb. 26, 2020), https://www.magnoliabannernews.com/news/2020/feb/26/former-says-director-walsh-sentenced-30-months-fed/.

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 12

inmates including his roommate who suffers from seizures."); Id. at 8 (letter from fellow inmate James Link, who was bedridden after a severe stroke, explaining that defendant voluntarily aided him in many ways, including helping him from his wheelchair to the shower, and noting that Link is "not the only person [defendant] has helped"); Dkt. # 264-1 at 1 (former inmate L.W.[9] describing how defendant assisted other inmates in the rehabilitation center and offered support during the sometimes-discouraging process); see also Dkt. 264-4 at 2 (Walsh describing defendant as "open and friendly," noting that he "shows a lot of heart with [other inmates]," has established friendships, and "is not sociopathic about people's pain").

The Court also notes that defendant's BOP disciplinary record shows that his last sanctioned incident was six years ago in 2016, when he allowed another inmate to use his phone account. Dkt. # 262-2 at 1. In contrast, from 1995 to 2015, defendant registered 37 incidents, at least 14 of which were related to substance abuse. Id. at 1-10. This is equivalent to approximately 1.9 incidents per year (0.7 of which were related to substance abuse) during a period when defendant was not consistently incarcerated. That defendant has registered zero incidents since 2016 while consistently imprisoned demonstrates a positive change in behavior.

Finally, the Court considers the evidence of defendant's changed outlook on life and willingness to work on improving. Dkt. # 262-4 at 6 (letter from retired BOP nurse noting defendant's "drive/willingness to improve" and that he "does not want to repeat his mistakes"); Id. at 2 (inmate Walsh noting that defendant has "begun doing the hard work ahead of him" of committing to a crime and drug-free life); Dkt. # 264-1 at 1 (former inmate L.W. noting defendant wants "to get out and do the right thing and be successful and not do drugs"); Dkt. # 262-5 at 1-2 (defendant's letter to the court expressing his commitment to rehabilitation).

The Court concludes that the newly submitted evidence supports a finding that this factor no longer weighs against releasing defendant or reducing his sentence.

---

[9] The Court notes that L.W. worked with the FBI as confidential human source (CHS) from the 1970s through 2007 (confirmed by a 2011 letter he provided from an FBI Special Agent to the then-US Attorney for the Southern District of Texas). Dkt. # 264-1 at 5-6. Defense offers this background as evidence of his experience and skill in making judgments about the character of others. Dkt. # 262 at 8.

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 13

### ii. Needs for the Sentence Imposed

Next, the Court considers the need for the sentence imposed (1) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (2) to adequately deter criminal conduct and "to protect the public from further crimes of the defendant," and (3) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

#### 1. Seriousness of the Offense

Consistent with its First Order, the Court finds that while the "seriousness of the offense, respect for the law, and just punishment" is a particularly nuanced factor here, on balance, it weighs against defendant. See Dkt. # 260 at 10-11 (explaining that "[w]hile the adversity that defendant has experienced during his term of incarceration indicates that the years defendant has served have been more impactful and challenging than the Court could have predicted," the seriousness of the offense outweighed that adversity).

#### 2. Deter Criminal Conduct and Protect the Public

However, the Court finds that the new evidence proffered by defendant requires a reevaluation of "the need for the sentence to adequately deter criminal conduct and to protect the public." 18 U.S.C. § 3553(a)(2)(B)-(C). Perhaps most significant to this factor are defendant's physical limitations. In the First Order, the Court concluded that "defendant's limited mobility and the limited functionality of one of his hands indicate that he presents a much lower risk to the public than he did when he was first sentenced." Dkt. # 260 at 11. As the Court has found that defendant's physical limitations remain substantially unchanged, this point continues to weigh in favor of defendant.

Also relevant is evidence of defendant's sobriety. In response to the Court's concern regarding his potential for substance abuse relapse, defendant submits several new pieces of evidence, including: (i) a record showing that he completed a substance abuse treatment class in 2014, at the beginning of his current period of incarceration, Dkt. # 262-3 at 3; (ii) defendant's declaration that he has requested additional drug treatment but has not yet been included in a

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 14

class,[10] id. at ¶ 1; see also id. at 3 (record showing he is waiting for NRES drug treatment); (iii) letters from medical personnel at MCFP Springfield indicating he is no longer abusing drugs,[11] Dkt. # 262-4 at 6-7; (iv) letters and interviews from fellow inmates indicating that he is no longer abusing drugs, id. at 1-5, Dkt. # 264-1 at 1-4; and (v) his own letter to the Court indicating that he is no longer interested in using drugs and he is prepared to participate in drug addiction rehabilitation outside of prison, if released, Dkt. # 262-5 at 1-2.  This information builds upon the evidence the Court had before it at the time of the First Order, which includes defendant's medical records showing that he has not been abusing his pain medication.  Dkt. # 264.  Viewed holistically, the Court finds that the evidence before it supports a conclusion that defendant's substance abuse issues do not weigh against a finding that compassionate release is warranted.

Finally, the Court notes that several of the letters submitted by BOP nurses and fellow inmates reflect the belief that defendant no longer poses a threat to the public. See, e.g., Dkt. # 262-4 at 6 (retired BOP nurse stating, "Given [defendant's] advanced age . . . his release from prison would not be detrimental to society.  Given the chance, he could be a productive member of society."); Dkt. # 264-1 at 3 (L.W. stating "[defendant] is not a threat to society").

---

[10] The government asks the Court to discredit defendant's recent request for additional drug treatment because it was made only after the Court suggested in the First Order that it would look more favorably upon a future request for sentence reduction if defendant first obtained treatment. Dkt. # 267 at 11.  The Court, however, will not fault defendant for following its instructions.

[11] The Court finds the letters from MCFP Springfield medical personnel regarding defendant's abstention from drug abuse to be persuasive.  Mr. Smith, a registered nurse, states:

> The request [defendant] is making for supervised release seems to be timely as he has an appropriate attitude towards the use of his pain medications.  When Jack arrived here in 2015, he had received a severe injury to his head, he appears only to request the medicine when his pain is not controlled with ibuprofen . . . This has been a pleasure to see Jack grow and change his prior desire for pain medications to one of only taken if needed.

Dkt. # 262-4 at 7. Ms. Laster, a retired registered nurse, likewise states, "[Defendant] did not exhibit any drug seeking behaviors and talked openly about his past drug use and criminal activity." Id. at 6.

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 15

The Court acknowledges defendant's history of absconding from halfway houses and poor behavior while on supervised release. Nonetheless, the Supreme Court has directed courts to consider evidence of post-sentencing rehabilitation in analyzing the need for the sentence imposed to deter criminal conduct and protect the public from further crimes of the defendant. See Pepper, 562 U.S. at 491 (citing 18 U.S.C. § 3553(a)(2)). The Court therefore finds that given defendant's post-sentencing rehabilitation, this factor weighs in favor of compassionate release.

### 3. Rehabilitation Needs

The next factor allows the Court to consider the need for the sentence imposed to address defendant's rehabilitation needs. See 18 U.S.C. § 3553(a)(2)(D). In the First Order, the Court concluded that defendant's rehabilitation needs "weigh in favor of a sentence reduction sooner rather than later because release planning may be more challenging as defendant grows older and his health continues to decline." Dkt. # 260 at 12 (citing Dkt. # 247 at 4; Dkt. # 244-1 at 5). Defendant has submitted updated evidence reiterating this conclusion. See Dkt. # 262-7 at 1 (conveying social worker's belief that as defendant's overall health and wellness remained mostly stable throughout 2021 and his functional ability or ability to care for himself had not changed, the listed housing options remain suitable). The Court therefore finds that this factor weighs in favor of compassionate release.

### iii. Need to Avoid Unwarranted Sentence Disparities

The sentence imposed should "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In the First Order, the Court considered the comparison between defendant's sentence and that of his co-defendant, Ronald Kettells, at length, and concluded that "this factor would not prevent the Court from treating defendant's motion differently from Mr. Kettells' motion." Dkt. # 260 at 12-13. The parties do not relitigate this factor. The Court therefore adopts its conclusion reached in the First Order.

Considering defendant's extraordinary and compelling circumstances and the applicable sentencing factors set forward in 18 U.S.C. § 3553(a) in light of defendant's new evidence, the

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 16

Court concludes that defendant has established that a reduction of his sentence of imprisonment is appropriate. If the Court determines that a reduction in sentence is appropriate, the Court may "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C. § 3582(c)(1)(A). Pursuant to this authority, the Court reduces defendant's term of imprisonment to time served and imposes a term of supervised release to run for five years from the date of his release. In issuing this Order, the Court is putting a great deal of faith in defendant, and the Court reminds defendant that it will not hesitate to revoke his supervised release and return him to prison if need be.

## IV.    CONCLUSION

For all the foregoing reasons, IT IS HEREBY ORDERED that defendant's motion for compassionate release (Dkt. # 262) is GRANTED. The defendant is to remain in custody until arrangements can be made by the United States Probation Office for direct placement in a residential reentry center. Custody shall not exceed 14 days beyond the date of this order unless extended by the Court.

The Court converts a five-year portion of defendant's unserved term of imprisonment into a term of supervision, subject to the following mandatory, standard, and special conditions (for the avoidance of doubt, "you" refers to defendant Jack Pershing Sexton):

1. You must not commit another federal, state, or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
4. You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution.
5. You must cooperate in the collection of DNA as directed by the probation officer.
6. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the

probation officer instructs you to report to a different probation office or within a different time frame.

7. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

8. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

9. You must answer truthfully the questions asked by your probation officer.

10. You must live at a place approved by the probation officer.  If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change.  If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

11. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

12. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change.  If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

13. You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 18

> communicate or interact with that person without first getting the permission of the probation officer.

14. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

15. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

16. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

17. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

18. You must follow the instructions of the probation officer related to the conditions of supervision.

19. You shall participate as instructed by the U.S. Probation Officer in a program approved by the probation office for treatment of narcotic addiction, drug dependency, or substance abuse, which may include testing to determine if you have reverted to the use of drugs or alcohol. You shall also abstain from the use of alcohol and/or other intoxicants during the term of supervision. You must contribute towards the cost of any programs, to the extent you are financially able to do so, as determined by the U.S. Probation Officer. In addition to urinalysis testing that may be a part of a formal drug treatment program, you shall submit up to eight urinalysis tests per month.

20. You shall provide the probation officer with access to any requested financial information including authorization to conduct credit checks and obtain copies of your federal income tax returns.

21. You shall reside in and satisfactorily participate in a residential reentry center program, as a condition of supervised release or probation for up to 120 days or until discharged by

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 19

the Program Manager or U.S. Probation Officer. You may be responsible for a 25% gross income subsistence fee.

22. Restitution in the amount of $29,628.93 is due immediately. Any unpaid amount is to be paid during the period of supervision in monthly installments of not less than 10% of your gross monthly household income. Interest on the restitution is waived.

23. You shall submit your person, property, house, residence, storage unit, vehicle, papers, computers (as defined in 18 U.S.C.§1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer, at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of supervision. Failure to submit to a search may be grounds for revocation. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

IT IS FURTHER ORDERED that defendant's motion to seal (Dkt. # 263) is GRANTED. Defendant's motion to file an overlength reply (Dkt. # 268) is also GRANTED.

DATED this 8th day of December, 2022.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 20